Nos. 25-89, 25-1475, 25-1480

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE,

*Petitioner*,

V.

U.S. ENVIRONMENTAL PROTECTION AGENCY,

*Respondent*,

AND

STATE OF CALIFORNIA, ET AL.,

*Respondent-Intervenors*.

_____

**On Petition for Review from the**
**U.S. Environmental Protection Agency**
EPA-HQ-OAR-2022-0332

_____

## STATE INTERVENORS' CROSS-MOTION FOR ABEYANCE AND
## RESPONSE TO EPA'S MOTION TO DISMISS

_____

ROB BONTA
  *Attorney General of California*
ANNADEL ALMENDRAS
  *Senior Asst. Attorney General*
DENNIS L. BECK, JR.
  *Acting Senior Asst. Attorney General*
MYUNG J. PARK
  *Supervising Deputy Attorney General*

KAVITA LESSER
CAITLAN MCLOON
M. ELAINE MECKENSTOCK
KATHERINE GAUMOND
  *Deputy Attorneys General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102
  Telephone: (415) 510 4439
  Email: katherine.gaumond@doj.ca.gov
  *Attorneys for State of California*
(additional counsel on signature pages)

September 8, 2025

## INTRODUCTION

Despite repeatedly urging this Court to hold these cases in abeyance since shortly after their inception, Respondent EPA now suddenly asks the Court to lift the abeyance and dismiss the cases as moot, invoking a congressional resolution signed by the President on June 12, 2025 (the Resolution). But the validity of the Resolution is actively being contested in separate district court litigation. Joined by Petitioners and Amici, EPA is attempting to use its motion to dismiss to secure an order that it would then use—as purportedly precedential, or at least preclusive, authority—against Intervenor States in that separate litigation. There is no other explanation for: EPA's decision to move to dismiss the petitions filed here, but not the parallel ones filed in the D.C. Circuit; multiple parties' requests for a published dismissal order; the parties' requests that this Court grant any pending intervention motions from Intervenor-States before dismissing; or Petitioners' refusal to voluntarily dismiss their petitions, while contending they are moot.

The Court should not countenance this attempt to misuse abbreviated motions practice here to short-circuit separate litigation that raises novel and complex constitutional claims against unprecedented actions by the federal government. Instead, State Intervenors respectfully request, pursuant to Federal Rule of Appellate Procedure 27(a)(B)(3), that the Court defer resolving EPA's motion to dismiss and continue to hold these cases in abeyance, pending disposition of the

1

separate district court litigation.  The Court could ask the parties to notify the Court within 30 days of such final disposition, at which time this Court may order motions to govern further proceedings in these cases.

Courts routinely hold cases in abeyance in such circumstances—i.e., where separate litigation could affect or narrow the relevant issues, including by determining the validity of an intervening government action that may have mooted the earlier case.  EPA has conceded that courts have authority to issue such an abeyance, even when jurisdictional questions may be pending, and has expressly asked for that approach in similar cases.  Continuing to hold these cases in abeyance would not prejudice any party.  If anything, as one set of Petitioners acknowledged, abeyance could be beneficial by allowing them to pursue their challenges in these cases, should the intervening Resolution be held invalid.

Abeyance would also avoid the need for this Court to wade into novel constitutional questions about the Resolution's invalidity without the benefit of a reasoned district court opinion, and accompanying record, that addresses those questions in the first instance.  By contrast, resolving EPA's motion now, on abbreviated motions papers, would prejudice State Intervenors, interfering with their fulsome development and presentation of their claims and defenses in separate litigation.

In the alternative, if the Court wishes to pass upon such issues now, it should—at the very least—refer EPA's motion to a merits panel and order full briefing and argument on the validity of the Resolution. That question is substantial and warrants careful treatment, not truncated consideration on a short timeline initiated with a four-page motion to dismiss.

Public Interest Intervenors support this motion. Petitioners and Respondent EPA oppose continued abeyance.

## BACKGROUND

### A.   California's Regulation of Vehicle Emissions

California has long faced severe air quality challenges, including for smog, which increases incidences of respiratory ailments, and for particulate matter, which can lead to heart attacks and even premature deaths.[1] California is also experiencing drastic climate change impacts caused by greenhouse gases, including extreme droughts, dangerous heatwaves, and worsening air quality. *E.g.*, Cal. Health & Saf. Code § 38501. Motor vehicle emissions contribute significantly to all these challenges. *Id.* § 43000(a).

Accordingly, California has been setting emission standards for new motor vehicles sold in the State for more than half a century. *Motor & Equip. Mfrs.*

---

[1] CARB, *2022 State Strategy for the State Implementation Plan* 2 (Sept. 22, 2022), https://ww2.arb.ca.gov/sites/default/files/2022-08/2022_State_SIP_Strategy.pdf.

3

*Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979) ("*MEMA*") (describing history). Since 1967, when Congress authorized federal standards and generally preempted States, California has maintained its own regulatory program, pursuant to waivers of preemption that EPA "shall" grant, absent certain limited conditions. 42 U.S.C. § 7543(b)(1).

California is the only State that may obtain a waiver to design its own regulations. 42 U.S.C. § 7543(b)(1); *see Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1079 n.9 (D.C. Cir. 1996). But other qualifying States may choose to adopt California's standards as their own, subject to certain conditions. 42 U.S.C. § 7507. This approach to vehicle emission regulation reflects a "legislative compromise" that preserves the benefits of a state "laboratory for innovation," while also protecting manufacturers from their fears of "51 different standards." *Engine Mfrs.*, 88 F.3d at 1080 (cleaned up). Thus, since 1967, "manufacturers must cope with two," but only two, sets of emission standards, meaning "motor vehicles must be either 'federal cars' designed to meet the EPA's standards or 'California cars' designed to meet California's standards." *Id.*

Congress's design has operated as intended for almost sixty years. EPA has granted California more than seventy-five preemption waivers as the State has expanded and strengthened its regulatory program.[2]

## B. The Omnibus Regulation and Waiver

Consistent with Congress's intent that the State "continue and expand its pioneering efforts," *MEMA*, 627 F.2d at 1111, the California Air Resources Board promulgated the Heavy-Duty Engine and Vehicle Omnibus Regulation (Omnibus) in in 2021. That regulation primarily strengthened certain emissions standards for heavy-duty vehicles (those with a gross vehicle weight rating greater than 8,500 pounds), requiring reduced emissions of smog-forming oxides of nitrogen and fine particulate matter as compared to the pre-existing standards for those pollutants. The revised standards take effect in two steps, with the first set starting in model year 2024, Cal. Code Regs., tit. 13, § 1956.8(a)(2)(C), and a second, more stringent set beginning with model year 2027, *id.* § 1956.8(a)(2)(D).

The EPA Administrator signed the waiver authorizing enforcement of the Omnibus regulation in December 2024, and EPA published its notice of decision in the Federal Register a few weeks later. 90 Fed. Reg. 643 (Jan. 6, 2025). In so doing, EPA followed a course charted over decades, including a host of prior

---

[2] *See* EPA, *Vehicle Emissions California Waivers and Authorizations* (July 24, 2025), https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations.

5

waivers for increasingly more rigorous emission standards for heavy-duty
vehicles.[3]

### C.   The Resolutions of Disapproval

Beginning in February 2025, the federal government took unprecedented
steps to target three Clean Air Act preemption waivers granted to California,
namely those for the Omnibus, Advanced Clean Cars II, and Advanced Clean
Trucks regulations.  The Executive Branch set the wheels in motion when
President Trump and EPA Administrator Zeldin declared by fiat in a press
release—and without any administrative process—that these already final waivers
were no longer adjudicatory orders (as defined by the Administrative Procedure
Act), but, rather, EPA "rules."[4]  EPA provided no explanation for reversing its
longstanding and consistent position—reaffirmed in each of these three waiver
decisions—that such waivers are not rules.  90 Fed. Reg. at 645 ("As with past
waiver decisions, this action is not a rule….").  EPA likewise provided no rationale
for disagreeing with the reasoned opinion of the Government Accountability
Office (GAO)—issued in response to an inquiry from members of Congress—that

---

[3] *See* EPA, *Vehicle Emissions California Waivers and Authorizations*
https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations (last visited September 4, 2025).

[4] EPA, *Trump EPA to Transmit California Waivers to Congress in Accordance with Statutory Reporting Requirements* (Feb. 14, 2025), available at
https://www.epa.gov/newsreleases/trump-epa-transmit-california-waivers-congress-accordance-statutory-reporting (last visited August 26, 2025).

an earlier preemption waiver was "not a rule because it is, instead, an order," as those terms are defined in the Administrative Procedure Act.[5]

The President and EPA purported to reclassify these three waivers from orders to rules solely for the purpose of subjecting them to the Congressional Review Act (CRA).[6]  The CRA establishes streamlined procedures—including limited debate and a simple majority vote requirement, with no filibuster, in the Senate—for Congress to review the Executive Branch's use of delegated lawmaking authority.  5 U.S.C. § 802(d).  Accordingly, on its face, the CRA only applies to certain "rules" (i.e., actions that proscribe law), as that term is defined in the Administrative Procedure Act and narrowed by the CRA itself.  *Id.* § 801(a)(1)(A) (requiring submission of "report" after promulgation of "rule"); *id.* § 804(3) (defining "rule").  An administrative action is thus not subject to the CRA unless it is such a "rule."

After the waivers were purportedly reclassified and submitted to Congress, the GAO and the Senate Parliamentarian—non-partisan advisers to Congress— were asked whether the CRA applied.  Both concluded it did not because these waivers are not rules.  *See California v. United States*, Compl., Case No. 4:25-cv-

---

[5] GAO, *Decision: Environmental Protection Agency—Applicability of the Congressional Review Act to Notice of Decision on Clean Air Act Waiver of Preemption* 4 (Nov. 30, 2023), available at
https://www.gao.gov/assets/870/863746.pdf (last visited August 26, 2025).
    [6] *Supra* n.4.

7

04966, Dkt. No. 1 (N.D. Cal. June 12, 2025) (Exhibit 1) at ¶¶ 78-80, 82-84, 89-91,

Exhibit B.  Congress plowed ahead anyway.  In order to do so, the Senate had to

pass two separate procedural changes (called points of order).  The first allowed

points of order in CRA proceedings despite contrary text in the statute.  *See id.* at

¶¶ 100-102.  The second point of order empowered the Executive Branch to decide

when CRA-like expedited procedures can be used, with the Senate accepting that

"[w]hen an Agency says it is a rule, it is a rule."  171 Cong. Rec. S3140 (May 22,

2025); *see also* 171 Cong. Rec. S3018 (May 21, 2025) (using "Agency-submitted

rule" instead of "rule"); *id.* at S3088 (same).  Pursuant to that second point of

order, Congress passed the Resolution purporting to disapprove of the Omnibus

waiver.  H.J. Res. 88.  The President signed the Resolution—along with two others

targeting the other above-mentioned waivers—on June 12, 2025.[7]

### D.    Litigation Involving the Congressional Resolutions

California and other States sued the federal government in the Northern

District of California on the same day the President signed the three resolutions.

Exh. 1.  The Plaintiff States (which include ten of the State Intervenors here) assert

seven counts and seek, *inter alia*, a declaration that the three congressional

resolutions are unlawful and invalid.  *Id.* at 27-40.  Plaintiff States allege that a

---

[7] A more thorough discussion of the defects in the enactment of the
congressional resolutions can be found in the attached Complaint (Exh. 1) at ¶¶ 71-
113.

Clean Air Act preemption waiver is not a "rule" as that term is defined in the Administrative Procedure Act or the CRA, that the President and EPA lacked any authority to reclassify already finalized waiver actions from orders into rules, and that doing so was unlawful. *Id.* at ¶¶ 114-152.

Plaintiff States also assert that this unprecedented use of an inapplicable statute to attack state laws involved "extraordinary defects in the national political process" that render the congressional resolutions "invalid under the Tenth Amendment" and structural principles of federalism. *South Carolina v. Baker*, 485 U.S. 505, 512 (1988); Exh. 1 ¶¶ 171-176. Additionally, Plaintiff States—and the Zero Emission Transportation Association (a Movant-Intervenor in the parallel Ninth Circuit challenges to the Advanced Clean Cars II waiver (Case No. 25-106), and in the Northern District of California case (Case No. 4:25-cv-04966))—allege that the congressional resolutions violate separation of powers principles. First, Congress acted outside its powers by overruling Executive Branch adjudications— actions taken to execute, rather than make, law—without altering the applicable substantive law. "The Constitution … is concerned with means as well as ends," *Horne v. Dep't of Agric.*, 576 U.S. 350, 362 (2015), and "does not permit Congress to execute the laws," *Bowsher v. Synar*, 478 U.S. 714, 726 (1986). *See also* Exh. 1 ¶¶ 164-166; *California v. United States*, ZETA's Complaint-in-Intervention., Case No. 4:25-cv-04966, Dkt. No. 43-1 (N.D. Cal. July 25, 2025) (Exhibit 2) ¶¶ 100-

9

113.  Second, the Senate impermissibly delegated the power to determine its own rules of procedure to the Executive Branch.  The authority to direct legislative procedure "only empowers Congress to bind itself," but for precisely that reason internal procedural rules must remain formally "independent … of the President." *INS v. Chadha*, 462 U.S. 919, 955 & n.21 (1983).  Here, however, the Senate opted to allow the Executive Branch to determine whether extraordinary, fast-track Senate procedures apply:  "When an Agency says it is a rule, is it a rule?… The answer is, yes, it is a rule. And then [the Senate] acted on that."  171 Cong. Rec. S3140 (May 22, 2025); *see also* Exh. 1 ¶¶ 157-162.  The United States' response to the *California* complaint is due September 19, 2025.

Meanwhile, on August 11, 2025, four manufacturers filed a separate district court case in which the validity of the congressional resolutions is actively being litigated.  These manufacturers allege that California is preempted from enforcing certain regulations (including Omnibus) because of the congressional resolutions. *Daimler v. Cal. Air Resources Board*, Compl, Case No. 2:25-cv-02255, Dkt. No. 1 (E.D. Cal. Aug 11, 2025) (Exhibit 3).  The *Daimler* Plaintiffs have moved for a preliminary injunction on all seven of their causes of action.  The United States intervened as a plaintiff, with claims predicated on the congressional resolutions, *id.* at Dkt. No. 43 (Exhibit 4), and joined the preliminary injunction motion, *id*. at Dkt. No. 57 (Exhibit 5).  Defendants' opposition to that motion is due September

10

16, 2025 and will include arguments that the congressional resolutions are unconstitutional or otherwise invalid.[8]

### E.    Procedural History of Relevant Petitions for Review

Prior to the congressional resolutions targeting them, each of the three EPA waivers was challenged in petitions for review under the Clean Air Act. All petitions challenging the Advanced Clean Trucks waiver were filed in the D.C. Circuit in 2023. *W. States Trucking Ass'n v. EPA*, Case No. 23-1143 (D.C. Cir. 2023). Those cases have been in abeyance—at EPA's request—since December 2023, after petitioners' opening briefs raised numerous issues overlapping with other cases recently argued in the same court.

Petitions seeking review of the Omnibus and Advanced Clean Cars II waivers were filed in this Court and in the D.C. Circuit in 2025.[9]  No briefing has occurred, because—at EPA's repeated request—all of these cases "have been in abeyance almost since their inception."  EPA Mot. at 3, Dkt. No. 31.

---

[8] Other private plaintiffs—and the United States as movant-intervenor—are also attempting to litigate these issues in the district court for the Northern District of Illinois. *American Free Enterprise Chamber of Commerce v. Engine Manufacturers Association*, Case No. 3:24-cv-50504 (N.D. Ill.).  The California official named in that case has moved to dismiss for lack of personal jurisdiction and improper venue. *Id.* at Dkt. No. 125.

[9] The lead Omnibus waiver cases are Ninth Circuit Case No. 25-89 and D.C. Circuit Case No. 25-1083.  The lead Advanced Clean Cars II waiver cases are Ninth Circuit Case No. 25-106 and D.C. Circuit Case No. 25-1078.

11

EPA has now moved to dismiss the petitions filed *in this Court only*, arguing that they are moot.  But tellingly, EPA has not moved to dismiss any of the above-referenced petitions filed in the D.C. Circuit.  In fact, EPA has continued to leave all of those cases in abeyance, even seeking to extend abeyances as needed to keep those D.C. Circuit cases inactive.[10]

## ARGUMENT

### I.   THE COURT SHOULD CONTINUE TO HOLD THESE CASES IN ABEYANCE

No party has disputed that this Court has authority and discretion to continue to hold these cases in abeyance.  Nor could they.  Indeed, one set of Petitioners has requested it under certain circumstances.  H.R. Ewell MTD Response at 13 n.5, Dkt. No. 37.  The Court has "broad discretion to stay proceedings as an incident to its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  EPA itself has confirmed recently that abeyance is perfectly appropriate and within a court's authority, even when there may be questions about the court's jurisdiction.  *See W. States Petroleum Ass'n v. EPA*, EPA's Reply in Support of Motion to Hold Case in Abeyance or Alternatively to Dismiss, Case No. 25-1080, Doc. 2113831 at 2 (D.C.

---

[10] *See Am. Fuel & Petrochemical Mfrs v. EPA*, Case No. 25-1083, Doc. 2133787 (D.C. Cir. Sep. 5, 2025); *Valero Renewable Fuels Co. v. EPA*, Case No. 25-1078, Doc. 2132195 (D.C. Cir. Aug. 27, 2025); *W. States Trucking Ass'n v. EPA*, Case No. 23-1143, Doc. 2028475 at 1-2 (D.C. Cir. Nov. 24, 2023).

Cir. May 1, 2025) ("No party has questioned this Court's authority to hold this case in abeyance rather than deciding the jurisdictional dispute right now.").  In these cases as well, "[i]t is appropriate for the Court to exercise that authority." *Id.* Continuing to hold these cases in abeyance would promote judicial economy, facilitate the development of a record and reasoned decision for this Court's future review, and cause no hardship to any parties.

> **A.    Continued abeyance promotes judicial economy, including allowing orderly consideration of complex issues**

Courts "often" hold cases in abeyance "in light of other pending proceedings that may affect the outcome of the case before [them]." *Basardh v. Gates*, 545 F.3d 1068, 1069 (D.C. Cir. 2008).  That is a quintessential use of abeyance. *See Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937) ("In the exercise of a sound discretion [a court] may hold one lawsuit in abeyance to abide the outcome of another, especially where the parties and issues are the same.").  EPA itself sought an abeyance in the petitions challenging the Advanced Clean Trucks waiver for this reason, i.e., where the "resolution of [separate] cases could decide or substantially narrow the issues." *See, e.g.*, *W. States Trucking Ass'n v. EPA*, EPA's Mot. to Hold Case in Abeyance, Case No. 23-1143, Doc. 2028475 at 1-2 (D.C. Cir. Nov. 24, 2023).

The same principles also commonly justify abeyance in instances like this one: when separate litigation challenges the validity of a subsequent government

action that allegedly moots an existing case. *See, e.g.*, *California v. DOE*, Case No. 21-108, Dkt. No. 220 (2d Cir. Apr. 29, 2022) (holding challenges to 2020 rule in abeyance pending disposition of challenges to 2022 repeal of that rule); *Murray Energy Corp. v. EPA*, Order, Case No. 16-1127, Doc. 1858346 (D.C. Cir. Aug. 26, 2020) (holding challenges to 2016 rules in abeyance pending disposition of challenges to overriding 2020 rule); *see also State of Texas v. EPA*, API's Docketing Statement, Case No. 24-1054, Doc. 2058541 at 3 (D.C. Cir. June 7, 2024) (listing multiple challenges in abeyance due to changing regulations).

Intervenor States respectfully submit that the same course is warranted here. The validity of the subsequent action that has allegedly mooted these petitions— the Resolution purporting to disapprove the Omnibus waiver—is actively being litigated in district courts. Holding these petitions in abeyance and allowing the separate litigation to proceed in the ordinary course would allow this Court to consider the validity of the Resolution with the benefit of a district court opinion and a relevant record (as opposed to the record here which concerns the waiver decisions). This "will sharpen and narrow the legal issues that must eventually be decided," whether in an appeal of a district court decision, or later in these petitions. *Green v. Dep't of Commerce*, 618 F.2d 836, 842 (D.C. Cir. 1980); *see Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1154 (9th Cir. 2000) ("Usually, an appellate court does not consider legal issues in the first instance but

14

instead has the benefit of the district judge's initial analysis."). That approach best respects the role of "a federal court of appeals" as "a court of review, not first view," *Shirk v. U.S. Dep't of Interior*, 773 F.3d 999, 1007 (9th Cir. 2014), a particularly important consideration in constitutional adjudication, which is "the most important and delicate of [a court's] responsibilities," *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974).

Rather than allow the ongoing district court litigation to proceed and determine the validity of the Resolution in the ordinary course, EPA (and Petitioners and Amici) ask the Court to subvert that orderly course by leapfrogging the district courts and deciding the issues now. Moreover, they make this ask by moving to dismiss cases that have been in abeyance since their inception and that challenge the validity of the Omnibus waiver, *not* the Resolution. If the Court entertained that request, it would have to consider complex and novel questions of constitutional and statutory law in the first instance, without the benefit of a full record or any reasoned lower court opinion, *see* Exh. 1 at ¶¶ 114-188 (asserting seven separate counts challenging validity of resolutions); *see also infra* Section II—simply for the purpose of mooting a challenge that has been inactive since it was filed. As in most cases, "the district court is better positioned to address these questions in the first instance with the benefit of briefing and specific analysis." *Bluetooth SIG Inc. v. FCA US LLC*, 30 F.4th 870, 874 (9th Cir. 2022).

15

Contrary to Petitioners' assertion, AFPM MTD Response at 2-3, Dkt. No. 36, a dismissal order here would not actually promote judicial economy. For example, even if the Court granted EPA's motion and issued an order that directly addressed the validity of the congressional resolutions targeting the Omnibus waiver (at issue here) and the Advanced Clean Cars II waiver (at issue in Case No. 25-106), that order could not address the congressional resolution targeting the Advanced Clean Trucks waiver—which was never challenged in this circuit. That congressional resolution presents distinct issues because, *inter alia*, the Advanced Clean Trucks waiver was in effect for more than two years before it was targeted, purportedly through use of a statute that requires submission to Congress before an action's effective date. 5 U.S.C. § 801(a)(1)(A). Thus, an order dismissing these petitions as moot could not fully resolve *California* (which challenges all three congressional resolutions) or *Daimler* (which challenges California's authority to enforce the Advanced Clean Trucks regulation).

Dismissal would not promote judicial economy for yet another reason. Petitioners explain that they may want to refile their petitions for review of the Omnibus waiver, after dismissal, if the Resolution is later invalidated in the separate litigation. AFPM MTD Response at 2 n.2; H.R. Ewell MTD Response at 12-13. But all Petitioners acknowledge this would be far from economical., as it would require this Court to rule on threshold issues like the timeliness of such a

16

petition under 42 U.S.C. § 7607(b)(1) and the authority of this Court to recall

mandates—issues not presented if this Court simply keeps these timely filed

petitions in abeyance. *See* AFPM MTD Response at 2 n.2; H.R. Ewell MTD

Response at 12-13. One set of Petitioners even admits that, for these very reasons,

"it might be more appropriate to hold this case in abeyance pending resolution of

California's lawsuit." H.R. Ewell MTD Response at 13 n.5. Holding these cases

in abeyance is undoubtedly the more economical route. *See Ctr. for Biological*

*Diversity v. EPA*, 56 F.4th 55, 71 (D.C. Cir. 2022) (courts "routinely stay [their]

hand when parties identify developments that are likely to render judicial

resolution unnecessary").

### B.    Continued abeyance causes no hardship to any party

A continued abeyance is also proper here because it would not cause

prejudice or hardship to any party. Petitioners' and EPA's own actions

demonstrate as much. At the repeated request of EPA, and without opposition

from Petitioners, these consolidated "cases have been in abeyance since almost

their inception." EPA Mot. at 3; *see* Dkt. Nos. 20, 24-26. And though the

Resolution was signed by the President in June, Petitioners never affirmatively

moved to dismiss these petitions, and EPA waited two months. If EPA or

Petitioners were harmed or prejudiced by an abeyance, they presumably would

have asked for it to be lifted sooner—and, for that matter, would not be

simultaneously asking the D.C. Circuit to keep identical petitions for review in abeyance. *See supra* Background Section E; *see also* H.R. Ewell MTD Response at 13 n.5.

In contrast, granting EPA's motion to dismiss on truncated briefing and no record could prejudice the State Intervenors by cutting short the separate litigation in which the validity of the Resolution is directly at issue. As noted above, this appears to be the sole purpose of EPA's motion—and Petitioners' and Amici's support for that motion: to obtain a ruling *from this Court* that the Resolution is valid, in the hopes that such a ruling will pre-determine the separate district court litigation. They have revealed as much via their unusual, and otherwise inexplicable, additional requests. They make clear that they specifically seek a published opinion from this Court, AFPM MTD Response at 10; Amicus at 12, Dkt. No. 34, and that they would not be satisfied if their support for dismissal was construed as a voluntary dismissal, AFPM MTD Response at 2 n.2. Moreover, the parties now insist that this Court grant any pending motions to intervene from Intervenor States' in the consolidated cases prior to dismissal, EPA Mot. at 4 n.1; AFPM MTD Response at 2 n.3; H.R. Ewell MTD Response at 4, even though they expressed no similar desire during the prior months these cases have been in abeyance. EPA has provided no reason for this request, but the reason is apparent:

18

EPA intends to assert preclusion against California and other district court litigants who are also Intervenor States.

In short, dismissal is not appropriate because it may force the Court into an unnecessary and premature decision on novel issues of constitutional law and potentially prevent States (and others) from litigating their challenges to the Resolution in the normal course. The Court should instead allow that normal course to proceed and continue to hold this petition in abeyance, as it has been for months. That approach would cause no hardship to any party and would allow the Court to consider those novel issues with the benefit of a lower court opinion and full record.

## II. IF THE COURT INTENDS TO CONSIDER DISMISSAL, IT SHOULD ORDER FULL BRIEFING AND REFER THE ISSUE TO A MERITS PANEL

If the Court declines to keep these cases in abeyance and intends to consider dismissing them as moot based on the validity of the Resolution, it should—at the very least—refer EPA's motion to a merits panel and order full briefing and oral argument on those issues.[11] Courts are usually "reluctant to render a decision on … important jurisdictional questions without the benefit of briefing and oral argument." *Nat'l Juvenile Law Ctr., Inc. v. Regnery*, 738 F.2d 455, 467 (D.C. Cir.

---

[11] If the Court chooses this option, it also might consider consolidating these cases with Case No. 25-106 (and consolidated) for purposes of such briefing and argument.

1984).  Unlike the current abbreviated motions' posture, full briefing would provide the Court with a relevant factual record and more developed legal arguments.  *See In re Lorillard Tobacco Co.*, 370 F.3d 982, 988 (9th Cir. 2004) (noting how the Court is "in a particularly poor position" to decide issues "[w]ithout a full record and without the benefit of an adversarial proceeding.").  That process is more consistent with how this Court considers most legal issues— and, given significant questions of first impression, would be particularly warranted here.

The Resolution is the culmination of an unprecedented attack by the federal government on state regulatory programs that have stood for more than half a century.  California and the other States whose laws were targeted by those attacks deserve a full opportunity to be heard on the Resolution's invalidity.  They are pursuing those claims in the normal course—presenting them in the complaint filed in *California* (and asserting them as defenses to the preliminary injunction motion in *Daimler*).  If this Court intends to short-circuit that district court litigation, it should—at a minimum—allow the States full briefing, including an opportunity to respond to arguments from EPA.

The federal government has never before sought to use expedited legislative procedures designed to respond to federal rules to upend state regulatory programs.  These extraordinary actions raise serious, novel questions of constitutional law that

20

require full-length briefing and adequate time to prepare.  To illustrate, as the Supreme Court and this Court have both recognized, "the contours of the 'extraordinary defect' test" for Tenth Amendment violations—articulated in *South Carolina*—"remain[] fuzzy" because Congress generally respects the vertical federalism boundaries built into the Constitution.  *Nevada v. Skinner*, 884 F.2d 445, 452 (9th Cir. 1989); *see also South Carolina*, 485 U.S. at 512 (declining to "attempt any definitive articulation" of test).  The States' challenge to the Resolution will bring that fuzziness into focus because, unlike in prior cases, there were myriad unparalleled defects in the process leading to the Resolution: from EPA's unexplained about-face purporting to reclassify already finalized agency actions all the way through the Senate's decision to let the Executive Branch decide which Senate procedures apply.  *Cf. Nevada v. Watkins*, 914 F.2d 1545, 1556 (9th Cir. 1990) (rejecting an "extraordinary defects" claim because "Nevada cannot point to *any* defect in the political process") (emphasis added).  However, to bring that focus to an infrequently litigated federalism claim, the States require the ability to fully brief the issues and to present their arguments in their entirety.

The same is true of the separation of powers arguments.  For example, Intervenors are unaware of another instance where a chamber of Congress has abdicated its exclusive constitutional power to make its own rules, letting the

21

Executive Branch dictate which rules apply to a particular legislative proposal.[12]
Nor is it commonplace for Congress to veto the Executive Branch's exercise of its
power to execute the law, as Congress did here by purportedly disapproving of
EPA's adjudicatory orders without changing the applicable statutory criteria. This
Court should have the benefit of full briefing on these issues (and preferably a
reasoned decision from a district court judge) before deciding them. And that is all
the more true given the consequences here—the fate of vehicle emission
regulations on which more than ten States rely to protect their residents from
harmful pollution and to meet federal air quality standards (where failing to do so
can result in sanctions).

     Petitioners' contention that 5 U.S.C. § 805 bars these challenges to the
Resolution only underscores the complexity of the issues this Court would need to
resolve if it does not hold this case in abeyance. That provision only applies to
actions or omissions "under" the CRA, *id.*, but it is disputed whether any relevant
action here ever qualified. By its plain terms, actions under the CRA apply only to
"rules" as that term is defined, *supra* Background Sections C-D, and no one

---

[12] Further highlighting why full briefing would be necessary for the Court to
properly consider the issues, Petitioners' political question argument is based on
mischaracterizing this separation of powers claim as one about "the asserted failure
of Congress to comply with its own procedural rules," AFPM MTD Response at 6,
rather than one about abdication, to another branch, of a power vested exclusively
in Congress. *See also* H.R. Ewell MTD Response at 9.

contends that definition encompasses the waivers at issue. And, even if 5 U.S.C. § 805 did bar *some* claims, it plainly does not bar the States' constitutional challenges. *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 561 (9th Cir. 2019).

These (and other) issues certainly should not be decided based on a four-page motion that presented no argument supporting the Resolution's validity. EPA's conclusory characterization of these challenges as "baseless" and its equally conclusory assertion that the Resolution should be "presumed valid" do not ask for, much less support, a determination that the Resolution *is* valid. EPA Mot. at 4. Petitioners' arguments in response cannot cure any defects in the motion itself on that point (nor can any arguments EPA may make in reply).

And Petitioners' mischaracterizations of the claims in the *California* complaint, *see, e.g.*, *supra* n.12, only underscore that these issues would benefit from development in—and a reasoned decision from—a district court. Moreover, the Resolution—and the myriad legal defects that led to it—are unprecedented actions taken by the federal government. The constitutionality of those actions should not turn on private parties' characterizations or arguments, particularly where those are submitted ten days after, *and in response to*, the motion at issue. Rather, Intervenor States should have an opportunity to respond to the federal government's positions—something EPA's four-page motion notably declined to

23

provide.  This is not an appropriate process to resolve complex, unusual constitutional questions of substantial import to Intervenor States.

## CONCLUSION

Intervenor States respectfully request that the Court grant their cross-motion for continued abeyance pending the final disposition of either *California v. United States* or *Daimler v. California Air Resources Board*.  If it does so, it should defer deciding EPA's motion to dismiss in the meantime.  Alternatively, if the Court wishes to take up EPA's motion, it should refer the motion to a merits panel and order full briefing and argument.


Dated:  September 8, 2025                    Respectfully submitted,


                                             *s/ Katherine Gaumond*
                                             _____

                                             Rob Bonta
                                               *Attorney General of California*
                                             ANNADEL ALMENDRAS
                                               *Senior Asst. Attorney General*
                                             DENNIS L. BECK, JR.
                                               *Acting Senior Asst. Attorney General*
                                             Myung J. Park
                                               *Supervising Deputy Attorney General*
                                             KATHERINE GAUMOND
                                               *Deputy Attorney General*

                                               *Attorneys for State of California*

24

FOR THE STATE OF COLORADO

PHILIP J. WEISER
ATTORNEY GENERAL

*/s/ David A. Beckstrom*
DAVID A. BECKSTROM
Second Assistant Attorney General
Colorado Department of Law
Natural Resources and Environment
Section
1300 Broadway, Tenth Floor
Denver, Colorado 80203
(720) 508-6306
david.beckstrom@coag.gov

FOR THE STATE OF CONNECTICUT

WILLIAM TONG
ATTORNEY GENERAL

MATTHEW I. LEVINE
Deputy Associate Attorney General

*/s/ Scott N. Koschwitz*
SCOTT N. KOSCHWITZ
Assistant Attorney General
Connecticut Office of the Attorney
General
165 Capitol Avenue
Hartford, Connecticut 06106
(860) 808-5250
scott.koschwitz@ct.gov

FOR THE STATE OF DELAWARE

KATHLEEN JENNINGS
ATTORNEY GENERAL

*/s/ Vanessa L. Kassab*
IAN R. LISTON
Director of Impact Litigation
RALPH K. DURSTEIN III
VANESSA L. KASSAB
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

FOR THE STATE OF HAWAII

ANNE E. LOPEZ
ATTORNEY GENERAL

*/s/ Lyle T. Leonard*
LYLE T. LEONARD
Deputy Attorney General
465 S. King Street, #200
Honolulu, Hawaii 96813
(808) 587-3050
lyle.t.leonard@hawaii.gov

FOR THE STATE OF ILLINOIS

KWAME RAOUL
ATTORNEY GENERAL

*/s/ Jason E. James*
MATTHEW J. DUNN
Chief, Environmental
Enforcement/Asbestos Litigation Division
JASON E. JAMES
Assistant Attorney General
Office of the Attorney General
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
(217) 843-0322
jason.james@ilag.gov

FOR THE STATE OF MAINE

AARON M. FREY
ATTORNEY GENERAL

*/s/ Scott Boak*
SCOTT BOAK
Assistant Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8800
Scott.boak@maine.gov

FOR THE STATE OF MARYLAND

ANTHONY G. BROWN
ATTORNEY GENERAL

*/s/ Steven J. Goldstein*
STEVEN J. GOLDSTEIN
Special Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
410-576-6414
sgoldstein@oag.state.md.us

KARA A. DORR
Assistant Attorney General
Office of the Attorney General
Maryland Department of the Environment
1800 Washington Blvd.
Baltimore, MD 21230
(410) 537-3047
kara.dorr@maryland.gov

FOR THE COMMONWEALTH OF
MASSACHUSETTS

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Seth Schofield*
SETH SCHOFIELD
Senior Appellate Counsel
JON WHITNEY
Assistant Attorney General
Office of the Attorney General
Energy and Environment Bureau
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200
seth.schofield@mass.gov

FOR THE STATE OF MINNESOTA

KEITH ELLISON
ATTORNEY GENERAL

*/s/ Peter Surdo*
PETER N. SURDO
Special Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2127
(651) 757-1061
peter.surdo@ag.state.mn.us

FOR THE STATE OF NEW JERSEY

MATTHEW J. PLATKIN
ATTORNEY GENERAL

*/s/Lisa Morelli*
Lisa Morelli
Deputy Attorney General
Division of Law
25 Market St., P.O. Box 093
Trenton, NJ 08625
(609) 376-2735
lisa.morelli@law.njoag.gov

FOR THE STATE OF NEW YORK

LETITIA JAMES
ATTORNEY GENERAL

JUDITH N. VALE
Deputy Solicitor General
ELIZABETH A. BRODY
Assistant Solicitor General
YUEH-RU CHU
Chief, Affirmative Litigation Section
Environmental Protection Bureau

*/s/ Ashley M. Gregor*
ASHLEY M. GREGOR
Assistant Attorney General
28 Liberty Street, 19th Floor
New York, NY 10005
(212) 416-8454
ashley.gregor@ag.ny.gov

FOR THE STATE OF OREGON

DAN RAYFIELD
ATTORNEY GENERAL

*/s/ Paul Garrahan*
PAUL GARRAHAN
Sr. Assistant Attorney General
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.oregon.gov

FOR THE STATE OF RHODE ISLAND

PETER F. NERONHA
ATTORNEY GENERAL

*/s/ Nicholas M. Vaz*
Nicholas M. Vaz
Special Assistant Attorney General
Office of the Attorney General
Environmental and Energy Unit
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov

FOR THE STATE OF VERMONT

CHARITY R. CLARK
ATTORNEY GENERAL

*/s/ Hannah Yindra*
HANNAH YINDRA
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3186
Hannah.Yindra@vermont.gov

FOR THE STATE OF WASHINGTON

NICHOLAS W. BROWN
ATTORNEY GENERAL

*/s/ Alexandria Doolittle*
ALEXANDRIA K. DOOLITTLE
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, Washington 98504-0117
(360) 586-6769
Alex.Doolittle@atg.wa.gov


FOR THE CITY OF CHICAGO

MARY B. RICHARDSON-LOWRY
CORPORATION COUNSEL

*/s/ Elizabeth Mary Tisher*
ELIZABETH MARY TISHER
Assistant Corporation Counsel
2 N. LaSalle Street, Suite 580
Chicago, IL 60602
(312) 744-3173
elizabeth.tisher@cityofchicago.org


FOR THE DISTRICT OF COLUMBIA

BRIAN L. SCHWALB
ATTORNEY GENERAL

*/s/ Caroline S. Van Zile*
CAROLINE S. VAN ZILE
Solicitor General
Office of the Attorney General for the
District of Columbia
400 6th Street N.W., Suite 8100
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov


FOR THE CITY OF LOS ANGELES

HYDEE FELDSTEIN SOTO
LOS ANGELES CITY ATTORNEY

*/s/ Michael J. Bostrom*
MICHAEL J. BOSTROM
Senior Assistant City Attorney
201 N. Figueroa St., 13th Floor
Los Angeles, CA 90012
(213) 978-1867
Michael.Bostrom@lacity.org

FOR THE CITY OF NEW YORK

MURIEL GOODE-TRUFANT
CORPORATION COUNSEL

*/s/ Hilary Meltzer*
HILARY MELTZER
Chief, Environmental Law Division
New York City Law Department
100 Church Street, Rm 6-146
New York, NY 10007
Telephone: (212) 356-2070
hmeltzer@law.nyc.gov

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 27(d)(2)(a) and Ninth Circuit Rules 27-1(1)(d) and 32-3, as, excluding the portions of the document exempted by Fed. R. App. P. 32(f), this document contains 5,497 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) as this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.

Dated:  September 8, 2025                    Respectfully submitted,


*s/ Katherine Gaumond*
_____

KATHERINE GAUMOND
*Deputy Attorney General*

*Attorney for State of California*